TURNER v. GARRARD. (No. 272.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 10, 1917.)

1. BROKERS �köm88(1)—SALE OF LAND—ANNULMENT OF CONTRACT—EVIDENCE.

In an action for commission for furnishing a buyer for land, evidence *held* not to warrant a directed verdict for plaintiff, although the contract was admitted but was claimed to have been annulled.

2. APPEAL AND ERROR ⊙⊐1064(1)—INSTRUCTIONS—HARMLESS ERROR.

In an action for commission for procuring a buyer of land, the burden is on the plaintiff to show that a sale was made while the agency contract existed, even though defendant admitted the contract and negotiation with the buyer while it was in force, but claimed it had been annulled before the sale; so that instruction that plaintiff must prove that contract had not been annulled was harmless error.

Appeal from Liberty County Court; C. N. Smith, Judge.

Suit by J. K. Turner against W. G. Garrard. Judgment for defendant, and plaintiff appeals. Affirmed.

H. E. Marshall, of Liberty, for appellant. E. B. Pickett, Jr., of Liberty, for appellee.

HIGHTOWER, C. J. The appellant, J. K. Turner, who was plaintiff below, filed this suit in the county court of Liberty county, against appellee, W. G. Garrard, seeking to recover judgment against appellee in the sum of $225, together with interest thereon at the rate of 6 per cent. per annum from the —— day of April, 1916, to the date of payment.

Appellant alleged, substantially in his petition: That at the special instance and request of appellee he procured and obtained a purchaser for a certain tract of land in Liberty county owned by appellee to which purchaser, so procured by appellant, appellee, about the —— day of April, 1916, sold said tract of land for a consideration of $4,500; that it was agreed between appellant and appellee that appellee would pay

appellant, as a commission on a sale of the land, 5 per cent. of the purchase price paid by the purchaser therefor. Appellant then alleged that after the sale of said land by appellee to the purchaser thereof, who was one Stephen Jackson, appellee repudiated his obligation to pay appellant a commission for the sale of said land, and in all things denied his liability to appellant under the contract by which appellee obligated himself to pay appellant said commission, and that appellee has never paid appellant such commission, or any part thereof.

Appellee answered by general demurrer and general denial.

The case was tried with a jury, to whom the cause was submitted by the court on the following special issue alone:

"Question No. 1. At the time the sale was made by Garrard to Jackson for the 300 acres of land, or at the time Jackson agreed to purchase said land on Garrard's terms, had the contract which the plaintiff before that time had with the defendant about receiving a commission from the sale of the land been abandoned? And the above question you will answer, 'Yes,' or, 'No,' on a separate sheet of paper which will be furnished you for that purpose, and let that answer be signed by your foreman. And in answering the above question, you are charged that the burden of proof is upon the plaintiff to prove the negative of said question by the preponderance of the evidence, and 'preponderance of the evidence' means the greater weight of credible testimony."

The court then proceeded to instruct the jury that they were the judges of the facts proved, of the credibility of the witnesses, and the weight to be given to their testimony, etc. In response to the question above submitted by the court, the jury answered, "Yes." Upon this verdict of the jury, the court entered judgment in favor of appellee, Garrard, to the effect that appellant, Turner, take nothing by the suit, and that appellee recover his costs, etc. Motion for new trial was seasonably made, which was by the court overruled, and its action in that respect duly excepted to, and the case is now before us for review.

The first assignment of error complains of the action of the court below in refusing to give to the jury a peremptory instruction requested by appellant directing a verdict for appellant, for the full amount sued for.

[1] It is urged by this assignment that the undisputed evidence showed that the defendant below, Garrard, had employed the plaintiff, Turner, to procure a purchaser for the land on an agreed commission of 5 per cent., and that Turner procured Stephen Jackson to purchase the land, and was the procuring cause of said Jackson purchasing the land, and that Turner thereby earned the commission sued for, said authority to sell the land having never been revoked or in any manner modified or canceled, and defendant's intention to cancel or annul same was never brought to plaintiff's knowledge. The proposition under this assignment is as follows:

"Where the owner of land agrees to pay an agent a certain commission for selling same for him, and never recalls the offer, time not being the essence of the contract, and the undisputed evidence shows that the land was sold through the procurement of the said agent, the agent is entitled to his commission."

There seems to be, and really is, no contention by appellee that the verbal contract by which appellee agreed to pay appellant a commission of 5 per cent. for the sale of the land was not made, as claimed by appellant; but it was the contention of appellee, on the trial below, and is his contention here, that the contract for the sale of this land on the commission specified was completely abandoned by appellant, and was at an end before and at the time the sale of the land by appellee to Jackson in April, 1916, was made, and that therefore appellee was not obligated to pay appellant anything as commission for the sale of the land to Jackson. Thus, it will be seen that the only real issue on the trial below was whether the verbal contract between appellant and appellee, by the terms of which appellant was to have a commission of 5 per cent. on the purchase money obtained for said land, was in existence or in effect at the time appellee sold the land to Jackson in April, 1916.

Without attempting to set out the evidence in detail bearing upon this point, because it is unnecessary to do so, we think it will suffice to say that the following constitutes substantially the material portions of the evidence bearing upon this point:

At the time this contract between appellant and appellee for the sale of the land was made, appellant, it seems, was aware that said Stephen Jackson was desirous of purchasing some land in Liberty county, and he also knew at the time that appellee was desirous of selling this tract of land; and it was appellant who suggested to appellee that he could probably obtain a purchaser for the land, and would undertake to do so for the usual commission of 5 per cent. on the sale, to which appellee agreed. Appellant testified that he could not remember, at the time of the trial below, what the price was that appellee agreed with him to take for the land, but was satisfied that the price originally named by appellee was in excess of $4,500, and might have been as much as $6,000, or somewhere between $5,000 and $6,000. Appellant further testified, in substance, that he went to see Stephen Jackson and made an effort to sell him the land for the price, whatever it was, demanded by appellee, and that he finally succeeded in having Jackson come to Liberty county and look at the land, and that, when Jackson saw the property, he declined to buy it at the price for which the same was offered to him by appellant, and stated to appellant that the price asked was too much for the land. Appellant's testi-

mony further shows that he thereafter again succeeded in having Jackson go to Liberty county and look at the land, and that, after talking with appellee about the sale of the land, Jackson again declined to buy, for the reason that the price demanded was more than he was willing to pay for the land. Appellant's testimony further shows that appellee was anxious to sell the land, and was impatient about the matter, and, among other things, stated to appellant that he (appellee) wanted to place other improvements on the land, unless Jackson was going to purchase the same, and that he could not wait much longer about the matter, and that thereupon appellant suggested to appellee that he go ahead and make such improvements on the land as he contemplated making, and that, in the event Jackson should finally take the land, appellee could add the cost of the improvements to the purchase price. This situation seems to have continued during the most of the year 1915, and finally, about January, 1916, according to the testimony of appellant, appellee again inquired of him regarding the probability of Jackson's taking the land, and that at this time appellant told appellee that the trade to Jackson was off, but that appellant meant by this that the trade was only off in so far as Jackson's willingness to take the land at that time was concerned, and that he again suggested that appellee go on and improve the land, if he desired to do so, and, if there should be a sale to Jackson, the cost of the improvements could be added to the purchase price, and that appellant did not mean, by stating to appellee that the trade was off with Jackson, that he (appellant) would not continue his efforts to sell the land to Jackson, but that he intended to continue his efforts in that connection, and to carry out his contract with appellee in that respect. He further testified, in substance, that on the day that the land was, in fact, sold by appellee to Jackson, in Sour Lake in Hardin county, he (appellant) accompanied appellee to Sour Lake to see Jackson, for the purpose, among other things, of assisting in the consummation of the trade with Jackson, and that on that day in Sour Lake, after the sale to Jackson was made by appellee, he requested appellee to pay him the commission agreed upon for the sale of the land, and that appellee declined to do so, stating at the time that he did not consider that he owed appellant anything for the reason, in substance, that the land was not sold by appellant to Jackson under the contract originally agreed upon between appellee and appellant, and appellee declined to recognize any obligation in that respect to appellant.

The testimony of appellee on this point was, in substance, that he made the contract with appellant, by which he authorized appellant to sell the land for him, and that he

agreed at the time of making the contract to take $4,500 cash for the land, and told appellant that if he could sell the place for that price he would pay him $225, and that appellant agreed to sell the land or undertake to do so for that price; that appellant, shortly thereafter, mentioned to appellee that appellant thought he had interested Stephen Jackson in the land, and would perhaps be able to consummate the sale to him on the terms given him by appellee; that appellant did, in fact, get Jackson to come and look at the land, and Jackson came to see the land perhaps several times, but each time declined to buy the land, stating that the price demanded by appellee was more than he was willing to pay, and Jackson never did agree to take the land during the time that appellant was trying to sell the land to him; that some time about the 1st of January, 1916, and after appellee had several times urged appellant to consummate the sale with Jackson, appellant told appellee that the trade was all off, and that he could not sell the land to Jackson, and that appellee then understood that there was no further chance to sell the land to Jackson, and that appellant so understood, and that appellee considered that there was no further contract between him and appellant for the sale of the land; that, in fact, appellant ceased his efforts to sell the land; and that, when appellant told appellee that the trade was off, appellee told him all right, and the matter was ended, as appellant knew and understood. Appellee testified, further, in substance, that on the day the land was sold to Jackson in Sour Lake by appellee, appellant, in fact, was in Sour Lake, but had gone there, not for the purpose of assisting appellee in the sale of the land, nor was he in any manner connected with appellee in the sale of the land to Jackson at that time, but, on the contrary, that appellant had gone to Sour Lake on that occasion for the sole purpose of bringing a mare home from Sour Lake, and that, in fact, appellant took no part whatever in the final sale to Jackson.

Joe Boucette, a witness for appellee, testified, in substance, that witness had a conversation with appellant in connection with his claim to a commission for the sale of the land in question, and that in such conversation appellant said, among other things, "I told Mr. Garrard that I had called the trade off;" that, in making that statement, appellant did not put any condition to it; that nothing was said about a condition; that this conversation was some time in the fall, while witness was on the farm; and that it was after Mr. Jackson had finally bought the land. Witness further stated that appellant made the statement to witness several times to the effect that he (appellant) had told Mr. Garrard that the sale of the land to Jackson was off; that in neither of such conversations did appellant

put any condition with reference to what he told Garrard at the time the statement that the trade was off was made to Garrard.

Jim McCreight, another witness for appellee, testified, in substance, that witness had a conversation with appellant about the commission claimed by appellant, and that in such conversation appellant made a remark about having called the trade with Jackson off. This witness further stated that, in connection with the discussion of the commission claimed by appellant, appellant, among other things, said to witness: "I will have to admit that we called the trade off, that is true"; that, in making such statement to witness, appellant did not explain that he had told Mr. Garrard to go ahead and add what improvements he wanted to, and he could charge for the additional improvements he added; that this was the only conversation witness had with appellant about the matter.

We should add further, perhaps, that appellant, on being recalled to the stand, also testified that subsequent to the time he had stated to appellee that the trade with Jackson was off appellee again requested appellant to see Jackson further about the matter, and to continue his efforts to sell the land to Jackson. This statement on the part of appellant, however, was flatly contradicted by appellee.

We believe that the foregoing states substantially the material testimony bearing upon the only contested issue in the case; that is, as to whether the contract between appellant and appellee for the sale of the land was still in existence at the time of the sale to Jackson, or whether it had been abandoned and considered at an end between the parties at that time.

Now, the question is: Does this evidence show, without dispute, as in effect contended by this assignment, that appellant was entitled to have a verdict instructed in his favor for the amount sued for, on the ground that he sold appellee's land or procured a purchaser therefor under the terms of his contract with appellee, and while the same was still in force? We have concluded that such evidence does not show, without dispute, that appellant earned the amount of money claimed, under the terms of his contract with appellee, by selling or procuring a purchaser for the same during the time that the verbal contract between himself and appellee was in force; but, on the contrary, we hold that the evidence was in sharp dispute on this point; and, further, we think that the evidence clearly preponderates in favor of appellee's contention that appellant had abandoned the contract between himself and appellee to sell the land to Jackson several months prior to the time appellee, himself, sold the land to Jackson, and that this was so understood, both by appellant and appellee, at the time the sale was made to Jackson, and for several months prior thereto. We therefore hold that the trial court was not in error in refusing to give the peremptory instruction requested by appellant, and overrule the assignment complaining of that action.

[2] The second assignment of error complains of the action of the court in giving to the jury that portion of the charge which instructed the jury that the burden rested upon appellant to prove by a preponderance of the evidence that the contract between him and appellee for the sale of the land, and the commission to be paid appellant therefor, had not been abandoned at the time of the sale by appellee to Jackson.

It will be observed, from what we have stated, that the only real issue between the parties was whether or not the verbal contract between appellant and appellee for the sale of the land was, at the time appellee sold the land to Jackson, in effect; and the court, in the submission of the issue to the jury, assumed, as it was authorized to do, that the contract, as declared on by appellant, had, in fact, existed, and only left to the jury to determine whether it was still in existence at the time of the sale to Jackson. The precise complaint in this connection by appellant is that this instruction by the court compelled appellant to prove a negative.

While this court does not give its approbation to the form of the charge here complained of, yet we are of the opinion that owing to the facts and circumstances of this particular case, and the character of the only issue which was left for the determination of the jury we should not hold that the giving of the instruction in this form was such error as should work a reversal of the judgment. It is unquestionably correct to say, and appellant frankly admits, that the burden of proof upon the whole case rested upon appellant, and by the whole case is meant, as we understand it, every material issue of fact necessary to be determined, before the plaintiff would have been entitled to a recovery under the terms of the express contract alleged. Before appellant would have been entitled, as plaintiff below, to have recovered anything against appellee, he was required to prove, in accordance with his allegations, that the contract between him and appellee had been made, as alleged, and that he carried out his part of such contract, by procuring a purchaser for the land in question upon the terms agreed upon between him and appellee, during the life or existence of the contract between him and appellee, and, if he failed to prove all of these facts, he was not entitled to recover anything, even though it was shown, without dispute, that the contract declared on did, at one time, exist between him and appellee. In other words, appellant had not made out his case merely by proving that at one time there existed a contract between him and appellee, as declared on in his petition, but he was required to go further, and prove that he complied with the contract and sold the land or procured a buyer willing, ready, and able to take the land, during the

life or existence of the contract, and had such proof been made, and that issue found in appellant's favor, unquestionably he would have been entitled to a verdict for the amount of his commission, as fixed by the contract. But falling short in the proof of the fact that a purchaser was procured for the land while the contract was in existence between him and appellee, he was not entitled to recover a commission from appellee under the terms of the contract between them.

We think that the effect of the instruction given by the trial court, although we do not approve the form, was no more than to tell the jury that, before appellant would be entitled to recover, the burden of proof rested upon him to show that he complied with the terms of the contract between him and appellee by selling the land to Jackson or procuring Jackson as a purchaser of same, during the existence or life of the contract, and that the fact that this instruction, in form, compelled the proof of a negative in this particular—that is, compelled the proof by appellant that the contract had not been abandoned—was not, under the circumstances of this case, prejudicial to appellant. And further, believing as we do, that a preponderance of the evidence adduced on the trial was in favor of appellee's contention, that the contract between him and appellant for the sale of the land was at an end and so considered by the parties at the time of the sale to Jackson, we have concluded that this assignment does not point out such error as could reasonably be considered prejudicial to appellant, and we overrule the assignment.

The judgment of the trial court is therefore, in all things, affirmed.

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes